**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                                           )<br>              Plaintiff/Respondent,     )<br>                                                           )<br>        v.                                                 )<br>                                                           )<br>ROSELVA CHAIDEZ,                       )<br>                                                           )<br>              Defendant/Petitioner.       ) | No. 03 CR 636-6<br><br>Honorable Joan B. Gottschall |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Defendant/Petitioner Roselva Chaidez, a lawful permanent resident of the United States, filed a petition for writ of error coram nobis complaining that neither this court nor her attorney informed her of the immigration consequences of pleading guilty to federal charges of mail fraud. (Doc. 178.) Chaidez pled guilty on December 3, 2003 (Doc. 50), and the court sentenced her to four years of probation (Doc. 65). On October 11, 2009, Chaidez filed her petition as a separate civil case. Chief Judge James Holderman dismissed the case and instructed Chaidez to refile her petition as part of the original criminal case before this court. (*See* Case No. 09 C 6372, Doc. 3.) Chaidez filed her petition as a motion on January 25, 2010. (Doc. 171.) She filed a corrected petition on March 23, 2010. (Doc. 178.) Just one week later, the Supreme Court issued its decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), holding that a habeas petitioner could bring a claim for ineffective assistance of counsel where he would not have pled

guilty but for the failure of his attorney to advise him of the immigration consequences of the plea.

In a previous opinion, this court explained that Chaidez would need to provide additional factual detail in order for the court to assess her claim under *Padilla*. *United States v. Chaidez*, No. 03 CR 636-6, 2010 WL 2740282, at *2 (N.D. Ill. July 8, 2010). Chaidez has now submitted an affidavit filling in some of the gaps. (*See* Doc. 188.) If it appears from the affidavit that Chaidez can make out her claim, the government has requested a hearing to establish what Chaidez knew about the possibility of deportation at the time her guilty plea.

## II. ANALYSIS

### A. Retroactivity

The government in its supplemental response argued that *Padilla* could not be applied retroactively in Chaidez's collateral attack on her guilty plea. The court concluded that Chaidez did not seek retroactive application of *Padilla*. Rather, the court stated, it need only apply the well-established rule in *Strickland v. Washington*, 466 U.S. 668 (1984). *Chaidez*, 2010 WL 2740282, at *2. Upon further consideration, the court is convinced that the issue is not so straightforward, and more thorough analysis is required. Thus, as an initial matter, the court reconsiders sua sponte its ruling on retroactivity.

Only a few courts have yet weighed in on the question of *Padilla*'s retroactive application. Some courts have found that the decision may be applied to convictions which became final before March 31, 2010, the date the *Padilla* decision was announced, and so is applicable retroactively. *See United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *8 (E.D. Cal. July 1, 2010); *People v. Bennett*, 906 N.Y.S.2d 696, 700

2

(N.Y. Crim. Ct. 2010). Other courts have reached the opposite conclusion. *Gacko v. United States*, No. 09-CV-4938 (ARR), 2010 WL 2076020, at *3 (E.D.N.Y. May 20, 2010); *People v. Kabre*, No. 2002NY029321, 2010 WL 2872930, at *10 (N.Y. Crim. Ct. July 22, 2010).

The Supreme Court's landmark decision in *Teague v. Lane*, 489 U.S. 288 (1989), limited the ability of courts to hear constitutional challenges to convictions on collateral review.[1] Teague clarified that a criminal defendant seeking to collaterally attack a conviction may not rely on a new constitutional rule of criminal procedure identified only after the date that the conviction became final.[2] *Id.* at 310. A conviction becomes final after the judgment of conviction is rendered, the availability of direct appeal is exhausted, and the time for filing a petition for certiorari has elapsed. *Id.* at 295.

The *Teague* analysis generally turns on whether a particular decision announced a new rule or merely applied an old rule in a new context.[3] When the Court overturns its

---

[1] Neither the Supreme Court nor the Seventh Circuit has determined whether the retroactivity rule of *Teague* applies to a coram nobis petition. What precedent exists regarding coram nobis has generally cited to post-conviction cases. *See* Larry W. Yackle, Postconviction Remedies § 7:27 (Thomson Reuters 2010). Other circuits have applied *Teague* in coram nobis cases. *See United States v. Mandanici*, 205 F.3d 519, 527 (2d Cir. 2000); *United States v. Swindall*, 107 F.3d 831, 834 (11th Cir. 1997). And the Seventh Circuit has stated that, "A writ of error coram nobis affords the same general relief as a writ of habeas corpus." *Howard v. United States*, 962 F.2d 651, 653 (7th Cir. 1992). The court will follow the Second and Eleventh Circuits and apply *Teague* in this case.

[2] Although *Teague* was a plurality opinion, a majority of the court quickly adopted the rule announced in that case. *See Penry v. Lynaugh*, 492 U.S. 302, 313 (1989), *overruled on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002).

[3] There are two exceptions to the *Teague* rule. First, "a new rule should be applied retroactively if it places 'certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* at 311 (quoting *Mackey v. United States*, 401 U.S. 667, 692 (1971)). *Padilla* clearly does not fit within this exception because that decision dealt with an attorney's duty to inform the client about the consequences of a guilty plea; it did not contain any holding about the power of the court to impose a judgment of conviction based on a particular crime. Second, courts may retroactively apply "watershed rules of criminal procedure." *Id.* The Supreme Court has made clear that this is a narrow exception for rules that are "central to an accurate determination of innocence or guilt." *Blintz v. Bertrand*, 403 F.3d 859, 867 (7th Cir. 2005) (noting that the Supreme Court has never applied the second

3

own prior precedent, clearly a new rule is established. *Saffle v. Parks*, 494 U.S. 484, 488 (1990). "[I]t is more difficult, however, to determine whether we announce a new rule when a decision extends the reasoning of our prior cases." *Id.*; *accord Teague*, 489 U.S. at 301. The *Teague* Court elaborated:

> Generally . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Id.* (emphasis in original).

The "dictated" language from *Teague* suggests a broad interpretation of what constitutes a new rule. Whenever uncertainty might exist about how a certain holding applies to a new context, then it could be said that the holding does not "dictate" the particular application. But the Supreme Court has not found that every novel application of an old precedent results in the announcement of a new rule. *See, e.g.*, *Stringer v. Black*, 503 U.S. 222, 237 (1992) (holding that cases invalidating use of vague aggravating factors in capital sentencing applied to Mississippi's capital sentencing law despite the fact that Mississippi used a different method of weighing aggravating and mitigating factors); *Penry*, 492 U.S. at 318-19 (holding that as-applied challenge to Texas death penalty statute did not seek application of new rule, despite earlier Supreme Court opinion rejecting facial challenge to the same statute). In *Penry* and *Stringer*, the Court determined that the results were "dictated" by law that existed at the time of the petitioner's conviction. Yet, neither of these decisions was unanimous. In each, Supreme Court Justices disagreed about the logical reach of the Court's earlier precedents.

---

*Teague* exception); *see also United States v. Mandanici*, 205 F.3d 519, 528-29 (2d Cir. 2000) (collecting Supreme Court cases rejecting application of second *Teague* exception).

In its habeas corpus jurisprudence, the Court has maintained a distinction between a court's statement of the law and its application of the law to a new set of facts. *See Williams v. Taylor*, 529 U.S. 362, 410-12 (2000). Under *Teague*, a novel statement of law will be considered a new rule while a new application of the rule will not. *Butler v. McKellar*, 494 U.S. 407, 414-15 (1990); *see also Thomas v. Gilmore*, 144 F.3d 513, 516 (7th Cir. 1998) (holding that petitioner seeking per se rule that counsel must subpoena all institutional records in capital cases would be barred by *Teague*, "but that leaves open the possibility that his lawyer failed to come up to minimum professional standards by not subpoenaing the records in the particular circumstances of *this* case") (emphasis in original). This distinction is admittedly a murky one. The discovery of a new rule will depend entirely upon the level of generality at which the court defines the new holding. *See Wright v. West*, 505 U.S. 277, 311 (1992) (Souter, J., concurring).

The holding in *Padilla* is an extension of the rule in *Strickland*. *Strickland* held that a defendant could have his conviction reversed if he could show that his counsel's representation "fell below an objective standard of reasonableness," and that that deficiency prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687-88, 694.[4] The question for this court is whether *Padilla* announced a new rule, as defined by *Teague*, or whether the Court merely applied *Strickland* to new facts.

*Padilla* could be described as establishing a per se rule that counsel must inform a client of immigration consequences before an informed guilty plea may be entered.

---

[4] The Court in *Padilla* was asked to address only the first half of the *Strickland* analysis. The Court left open the question of whether petitioner had been prejudiced by his counsel's ineffective assistance. *Padilla*, 130 S. Ct. 1483-84.

5

Alternatively, the case can be read as a straightforward application of *Strickland*: the petitioner's attorney "fell below an objective standard of reasonableness," because, as a factual matter, the professional standards at the time of the client's plea required counsel to inform of potential immigration consequences.

Both of these potential readings have some appeal. The government points out that the language of the opinion suggests the Justices recognized the novelty of its holding. *Padilla*, 130 S. Ct. at 1486 ("[W]e now hold that counsel must inform her client whether his plea carries a risk of deportation."); *id.* at 1488 (Alito, J., concurring) ("[T]his Court has never held that a criminal defense attorney's Sixth Amendment duties extend to providing advice about [collateral consequences of a conviction].") As one court recently observed in declaring that *Padilla* would not apply retroactively, the Supreme Court's decision effectively changed the law in nine circuits and the majority of states. *Kabre*, 2010 WL 2872930, at *4-5. Every circuit to have addressed the issue, including the Seventh Circuit, had concluded that deportation is a collateral consequence of a conviction and counsel is not ineffective for failing to warn the client about the potential immigration consequences of conviction. *Id.* at *4 (citing *United States v. Gonzalez*, 202 F.3d 20 (1st Cir. 2000); *United States v. Santelises*, 476 F.2d 787 (2d Cir. 1973); *United States v. Del Rosario*, 902 F.2d 55 (D.C. Cir. 1990); *United States v. Yearwood*, 863 F.2d 6 (4th Cir. 1988); *United States v. Banda*, 1 F.3d 354 (5th Cir. 1993); *United States v. George*, 869 F.2d 333 (7th Cir. 1989); *United States v. Fry*, 322 F.3d 1198 (9th Cir. 2000); *Broomes v. Ashcroft*, 358 F.3d 1251 (10th Cir. 2004); *United*

*States v. Campbell*, 778 F.2d 764 (11th Cir. 1985)).[5] These decisions are strong support for the proposition that *Padilla* announced a new rule. *See Butler*, 494 U.S. at 415.

Nevertheless, as the Supreme Court stated in *Williams*, "[e]ven though we have characterized the new rule inquiry as whether 'reasonable jurists' could disagree as to whether a result is dictated by precedent, the standard for determining when a case establishes a new rule is 'objective,' and the mere existence of conflicting authority does not necessarily mean a rule is new." 529 U.S. at 410 (quoting *Wright*, 505 U.S. at 304). *Padilla* did not overturn any prior decision of the Supreme Court. *Padilla*, 130 S. Ct. at 1481 ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*."). Justice Stevens's majority opinion in *Padilla* relied primarily on citations to *Strickland* itself as well as secondary sources discussing prevailing professional norms at the time of Padilla's plea. *Id.* at 1482-83. And the Court noted its longstanding reliance on "[p]revailing norms of practice as reflected in American Bar Association standards and the like" to determine the extent of professional obligations in the *Strickland* analysis. *Id.* at 1482. The Court also noted that the extent of the advice counsel is required to give will be entirely fact-dependent. *Id.* at 1483. The law in Padilla's case was straightforward. But often the immigration consequences will be less clear, and counsel is not required to know every intricacy of immigration law. *Id*.

---

[5] Before *Padilla* there was a split among the circuits on the question of whether counsel is ineffective in affirmatively providing incorrect information about immigration consequences. *See Padilla*, 130 S. Ct. at 1484. The Court held that an attorney can be ineffective both for misleading her client and for failing to provide any advice. *Id.* Chaidez does not aver that she was misled, but rather that her attorney provided no information about immigration consequences.

7

Further, the Court has noted that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams*, 529 U.S. at 391. In discussing a different type of claim, Justice Kennedy wrote:

> Whether the prisoner seeks the application of an old rule in a novel setting, depends in large part on the nature of the rule. If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule.
>
> The rule of *Jackson v. Virginia*, 443 U.S. 307 (1979), is an example. By its very terms it provides a general standard which calls for some examination of the facts. The standard is whether any rational trier of fact could have found guilt beyond a reasonable doubt after a review of all the evidence, so of course there will be variations from case to case. Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent.

*Wright*, 505 U.S. at 308-09 (Kennedy, J., concurring) (citations omitted); *cf. Bousley v. United States*, 523 U.S. 614, 619-20 (1998) (rejecting application of *Teague* to claim that guilty plea was not knowing and intelligent because, even though intervening Supreme Court authority provided the reason for questioning the validity of the plea, "[t]here is surely nothing new about this principle").

Justice Kennedy's analysis applies equally to *Strickland* claims. In *Osagiede v. United States*, 543 F.3d 399, 408 n.4 (7th Cir. 2008), the Seventh Circuit rejected the argument that *Teague* prevented a habeas petitioner from arguing that his counsel had been ineffective for failing to seek a remedy under Article 36 of the Vienna Convention. The court, quoting Justice Kennedy's concurrence in *Wright*, held that, although the petitioner cited no previous cases where *Strickland* claims had succeeded under this theory, an application of *Strickland* in this novel context did not create a new rule. *Id*.

8

The court relied on the fact that "a reasonable Illinois lawyer would have known" that Article 36 created individual rights. *Id.* at 409-10.

Thus, the only question for this court is whether this is "the infrequent [*Strickland*] case that yields a result so novel that it forges a new rule." *Id.* at 408 n.4. It is a close question, but the court is convinced that *Padilla* did not announce a new rule for two reasons. First, the petitioner in *Padilla* brought a collateral challenge to his conviction.[6] Thus, if Chaidez's claim is barred by *Teague*, Padilla's claim should have been barred as well. Prior to the decision in *Teague*, the Supreme Court would regularly announce new rules but not address the issue of retroactivity until subsequent cases. *Teague*, 489 U.S. at 302-03. This procedure led to "unequal treatment of those who were similarly situated." *Id.* at 303. The *Teague* Court declared that, going forward, the issue of retroactivity should be decided as a threshold question on collateral review, before addressing any constitutional claim. *Id.* at 305. Reaching out to decide constitutional questions on collateral review, even though the rule proposed by a petitioner could not be applied retroactively, would threaten "the integrity of judicial review" by "'assert[ing] that our constitutional function is not one of adjudication but in effect of legislation.'" *Id.* at 304 (quoting *Mackey*, 401 U.S. at 679). Although the government may waive the issue of retroactivity, a court can raise it sua sponte. *Thomas*, 144 F.3d at 516. In *Teague*, the government did not argue retroactivity, but the Court felt compelled to decide the case on those grounds. In *Padilla*, despite three separate opinions, no member of the Court even mentioned *Teague* or any retroactivity issue. In fact, as two courts have noted, the

---

[6] Jose Padilla pled guilty to three drug-related charges; final judgment was entered on October 4, 2002. Padilla filed for post-conviction relief in state court on August 18, 2004. *Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008). The Supreme Court of Kentucky eventually ruled that Padilla was not entitled to relief, *id.* at 485, and Padilla appealed that decision to the U.S. Supreme Court.

9

majority opinion stated that "it had 'given serious consideration' to the argument that its ruling would open the 'floodgates' to new litigation challenging prior guilty pleas." *Hubenig*, 2010 WL 2650625, at *7 (quoting *Padilla*, 130 S. Ct. at 1484-85); *accord Bennett*, 903 N.Y.S.2d at 700. The Court stated:

> It seems unlikely that our decision today will have significant effect on those *convictions already obtained* as the result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea.

*Padilla*, 130 S. Ct. at 1485 (emphasis added). "If the Court intended *Padilla* to be a new rule which would apply only prospectively, the entire 'floodgates' discussion would have been unnecessary." *Hubenig*, 2010 WL 2650625, at *7.

Second, application of *Padilla* in cases like this one continues to promote the finality of judgments, which is the purpose behind the rule in *Teague*, *see Gilmore v. Taylor*, 508 U.S. 333, 351 (1993) (O'Connor, J., concurring), while balancing the need to provide meaningful review of constitutional errors resulting in uninformed guilty pleas. A post-conviction court applying *Strickland* is bound to consider whether counsel's assistance was effective with reference to professional standards *as they existed at the time of the conviction*. *Connor v. McBride*, 375 F.3d 643, 656 (7th Cir. 2004). Critical to the Court's decision in *Padilla* was the fact that professional legal standards had long required criminal attorneys to inform their clients of immigration consequences. 130 S. Ct. at 1482-83. The Supreme Court, itself, recognized as early as 2001 that immigration consequences of guilty pleas would be critically important to defendants and that "competent defense counsel, following the advice of numerous practice guides" would be expected to advise clients of the opportunity for discretionary relief from rules permitting

10

deportation. *INS v. St. Cyr*, 533 U.S. 289, 323 & n.50 (2001). In *Rompilla v. Beard*, 545 U.S. 374 (2005), a habeas case, the Court held that counsel had been ineffective in failing to examine certain mitigating evidence. The majority rejected the contention of dissenters that the opinion created a "rigid, *per se*" rule that could not be considered on collateral attack. *Id.* at 389. That decision, like the one in *Padilla*, relied heavily on ABA professional standards in concluding that counsel's representation had fallen below an objective standard at the time of conviction. *Id.* at 387.

  The Supreme Court has employed a "functional view of what constitutes a new rule." *Saffle*, 494 U.S. at 488. To make out a *Strickland* claim, a criminal defendant will generally be required to bring in evidence that has not been made part of the record. *United States v. Fish*, 34 F.3d 488, 491 n.1 (7th Cir. 1994). On direct review, an appellate court generally cannot consider this additional evidence. *Id.* Thus the court hearing the *Strickland* claim in a collateral attack on a federal conviction will serve a function similar to the appellate court, by being the first to reconsider the work done by the trial court. This function will be especially important in cases like this one. Chaidez pled guilty, allegedly relying on the ineffective advice of counsel. She received a sentence of four months probation and, rightly, saw no reason to seek a direct appeal. Only when the immigration consequences of her plea became clear years later, after the opportunity for appeal had long since past, did she seek to challenge the plea. Virtually all criminal defendants with *Padilla* claims are likely to have had little reason to appeal their own guilty pleas. If the Supreme Court had refused on retroactivity grounds to reach the constitutional claim in *Padilla*, no court would ever have been able to establish

11

that counsel must advise about immigration consequences of a guilty plea. The likelihood of the issue arising on direct appeal would have been miniscule.

Accordingly, the court holds that *Padilla* did not announce a new rule for *Teague* purposes and affirms its earlier opinion that no retroactivity problem is raised by petitioner's claim.

### B. Chaidez's Affidavit

The court now turns to a review of the affidavit submitted by Chaidez. In its previous opinion, the court explained that coram nobis relief is available only where petitioner can show: 1) there was an error "of the most fundamental character," 2) there are "sound reasons for the failure to seek earlier relief," and 3) the petitioner "continues to suffer from [her] conviction even though [s]he is out of custody." *Chaidez*, 2010 WL 2740282, at *2. As the court previously held, Chaidez can satisfy the first element of this test by showing that her defense attorney provided ineffective assistance. *Id.* at *2-3. Chaidez's affidavit states that her attorney "never informed me that as a non-U.S. Citizen, a lawful permanent resident was subject to removal or deportation from the United States for committing any aggravated felony without any form of relief available to me." (Aff. ¶ 8.) Chaidez also states that had the attorney explained the immigration consequences, Chaidez would not have pled guilty. (*Id.* ¶ 10.)

Next, the court held that Chaidez could establish the second element of the coram nobis standard by showing that she had a good reason for waiting until now to raise the issue. *Chaidez*, 2010 WL 2740282, at *4-5. The affidavit states that she "first became aware of my immigration troubles quite by accident in early 2009." (Aff. ¶ 14.) Chaidez avers that she learned that she could be deported only after she attempted to apply for

citizenship (*id*. ¶¶ 15-18), just a few months before she first sought relief from her conviction.[7]

Finally, the court held that Chaidez could establish the third element of the coram nobis standard because she pled guilty to a crime for which federal law permits the Attorney General to seek deportation. *Chaidez*, 2010 WL 2740282, at *4. And, in fact, Chaidez alleges that the government has initiated removal proceedings against her. (Aff. ¶ 18.)

Now that Chaidez has established a legally sufficient claim for relief, she is entitled to an evidentiary hearing.[8] *See United States v. Bejacmar*, 217 Fed. Appx. 919, 921 (11th Cir. 2007) (quoting *Aron v. United States*, 291 F.3d 708, 714 n.5 (11th Cir. 2002)) (where coram nobis petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim"); *United States v. Liska*, 409 F. Supp. 1405, 1406 (E.D. Wis. 1976) ("Where . . . the [coram nobis] petitioner has alleged in a sworn affidavit facts which, if true, might well entitle him to some form of relief, it would be improper to deny him a hearing on his claim."). Chaidez should be prepared to present evidence on all elements of her claim,

---

[7] Chaidez's affidavit contains an apparent inconsistency. She states:

> 18. Then on or about December 2009, I received a Notice to Appear before an immigration judge for removal proceedings.
>
> 19. I immediately contacted my U.S. Probation Officer, Juan Tappia, who gave me the name of my current immigration lawyer, Gerardo Gutierrez.

(Aff. ¶¶ 18-19.) This suggests that Chaidez did not meet with her attorney until at least December; however, she first filed her petition through counsel in October 2009. Nevertheless, the affidavit also states that Chaidez first learned of the possibility of deportation in "early 2009," and the court relies on that factual averment in concluding that Chaidez may be able to satisfy the requirements of coram nobis.

[8] At a court appearance on August 11, 2010, the government sought permission to file a response to Chaidez's affidavit. The court ordered the response by August 23, 2010. (Doc. 192.) If the government points to any deficiencies with the affidavit that are not noted by the court, the court may reconsider this section of the opinion at that time.

and the government will be permitted to cross examine petitioner and present any evidence contradicting the facts as alleged by Chaidez. Chaidez faces a heavy burden, because counsel is presumed effective. *Fish*, 34 F.3d at 491. Chaidez must show that counsel's performance "fell below an objective standard of reasonableness," and "there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*.

### III. CONCLUSION

For the reasons stated above, Chaidez is entitled to a hearing on her claim of ineffective assistance of counsel.

ENTER:  /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 11, 2010