**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 03 CR 636-6 |
| Plaintiff/Respondent, ) | |
| ) | Honorable Joan B. Gottschall |
| v. ) | |
| ) | |
| ROSELVA CHAIDEZ, ) | |
| ) | |
| Defendant/Petitioner. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Petitioner Roselva Chaidez was born in Durango, Mexico in 1956. She arrived in the United States in the 1970's as an undocumented alien. Eventually, she became a permanent legal resident and now lives in Chicago with her three children and two grandchildren.

Chaidez pled guilty in December 2003 to two counts of mail fraud, and was sentenced to four years probation. (Docs. 50, 65.) Federal law provides that an alien who is "convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Because the fraud to which Chaidez pled guilty involved a loss in excess of $10,000, the conviction made Chaidez eligible for removal from the United States. *See* 8 U.S.C. § 1101(a)(43)(M)(i) (defining "aggravated felony"). For whatever reason, the government did not initiate removal proceedings following Chaidez's conviction. Chaidez served her sentence and continued to reside in United States.

In July 2007, Chaidez, who does not speak English, received assistance in filling out an application to obtain United States citizenship. On October 15, 2008, Chaidez was interviewed by immigration authorities about her application. At the interview, an official asked Chaidez

about the fraud conviction. Chaidez had indicated on her application that she had never been convicted of any crime, but immigration officials discovered this misstatement. Chaidez was told that further investigation would have to be conducted, and she would be contacted again.

On March 26, 2009, Chaidez was served with notice to appear before an immigration judge. The notice stated that the government sought to deport Chaidez based on her conviction. When Chaidez appeared for the immigration hearing in June 2009, the judge told Chaidez that she needed an attorney and continued the hearing. Chaidez met with several attorneys and finally retained her current counsel on August 11, 2009.

On October 11, 2009, Chaidez filed a petition for writ of error coram nobis seeking to overturn the fraud conviction.[1] Chaidez claimed that her defense attorney, Kaaren Plant, had never informed Chaidez that deportation was a potential consequence of her guilty plea. At the time Chaidez filed her petition, Seventh Circuit law did not permit a conviction to be overturned on this basis. *See United States v. George,* 869 F.2d 333 (7th Cir.1989). However, on March 31, 2010, the Supreme Court issued its opinion in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), where the Court held that an attorney provides ineffective assistance of counsel when failing to warn that a guilty plea could result in deportation.

---

[1] As the court explained in a previous opinion:

Under the All Writs Act, 28 U.S.C. § 1651, the court has the power in a criminal case to issue a writ of coram nobis to correct errors "'of the most fundamental character' that render the proceeding invalid." *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir. 2007) (quoting *United States v. Morgan,* 346 U.S. 502, 509 n.15, 511-12 (1954)). Coram nobis is available only where Congress has provided no other remedy, such as habeas corpus. *Carlisle v. United States*, 517 U.S. 416, 429 (1996). Because one requirement of a writ of habeas corpus is that the petitioner be in custody, *see* 28 U.S.C. § 2255, coram nobis would be the appropriate remedy where the petitioner was fined rather than given a custodial sentence or, in situations like this one, where the petitioner has already completed a term of custody. *United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988). The petitioner must demonstrate that she had "sound reasons for the failure to seek earlier relief," and that she "continues to suffer from [her] conviction even though [s]he is out of custody." *Sloan*, 505 F.3d at 697.

*United States v. Chaidez*, No. 03 CR 636-6, 2010 WL 2740282, at *1 (N.D. Ill. July 8, 2010).

2

The court held a hearing on Chaidez's petition. Neither side presented much evidence. Chaidez testified that Plant never informed her that she could be deported because of the guilty plea. Chaidez claims she did not know about the immigration consequences until the government informed her that it was seeking deportation in March 2009. Chaidez stated that, if she had been properly informed, she would have insisted on going to trial. She testified that her family and her life are in the United States. Chaidez is responsible for caring for her grandchildren while her daughter works. Chaidez testified that she would have done everything possible to remain in the United States, even though she would have risked harsher punishment and deportation should the government have prevailed at trial.

At the time she represented Chaidez, Plant was serving as an attorney with the Federal Defender Program. In December 2009, Plant died of lung cancer, and the government never had an opportunity to interview Plant about her representation of Chaidez. The government did examine Plant's attorney file, but it contained little information other than a notation that Plant met with Chaidez two times, once for two and a half hours before the change of plea and once before the sentencing.

## II. ANALYSIS

As this court explained in its two previous opinions, *see United States v. Chaidez*, ---F. Supp. 2d---, 2010 WL 3184150 (N.D. Ill. Aug. 11, 2010); *United States v. Chaidez*, No. 03 CR 636-6, 2010 WL 2740282 (N.D. Ill. July 8, 2010), Chaidez is entitled to relief if she can show the following: (1) Plant failed to inform Chaidez of the immigration consequences of pleading guilty to an aggravated felony, (2) had Chaidez been properly informed, she would not have pled guilty, and (3) Chaidez has sound reasons for failing to challenge her conviction sooner. The first two requirements are the familiar two-step analysis under *Strickland v. Washington*, 466

U.S. 668 (1984), for determining whether a defendant is entitled to relief for ineffective assistance of counsel. The third requirement comes from the law of coram nobis. A writ of coram nobis has no statute of limitations, but the doctrine of laches does apply. *United States v. Darnell*, 716 F.2d 479, 480-81 (1983).

Chaidez bears the "heavy burden" of showing she is entitled to relief. *Id.* at 481 n.5. Because the standard practice in 2003 was for attorneys to inform their clients of immigration consequences of guilty pleas, the court should "presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." *Padilla*, 130 S. Ct. at 1485. And the court reviews the proceedings under "a standard akin to 'actual prejudice.'" *Darnell*, 716 F.2d at 481 n.5. Chaidez must show that but for her attorney's error, she would have gone to trial. "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 130 S. Ct. at 1485.

Chaidez's testimony is unrebutted in two respects: first, that Plant did not provide advice about the immigration consequences of a guilty plea, and, second, that Chaidez would have gone to trial had she known the truth. Of course, "[n]o 'unrebutted' but noncredible testimony needs to be given any weight by the factfinder." *In re Schmitt Farm Partnership*, 161 B.R. 429, 432 (N.D. Ill. 1993); *accord Lerch v. C.I.R.*, 877 F.2d 624, 631-32 (7th Cir. 1989). The government cross-examined Chaidez in an attempt to discredit her testimony. Chaidez admitted on the stand that many of the statements in her affidavit were incorrect.[2] However, these errors appear to reflect sloppy lawyering in preparing the affidavit rather than a calculated effort to deceive the

---

[2] For example the affidavit states that, "[Plant] never inquired of me my legal status in the United States, and I did not inform her that I was a lawful permanent resident." (Aff. ¶ 7.) At the hearing, Chaidez testified that Plant was aware that Chaidez was a permanent resident. The affidavit also contains inaccuracies concerning the dates that Chaidez applied for citizenship and received notice to appear before an immigration judge. (*See* Aff. ¶¶ 14, 18.)

4

court. In addition, Chaidez noted on her immigration application that she had never been convicted of a crime. But Chaidez does not speak English, and she filled out the application with the assistance of non-lawyers. When confronted by immigration officials, she admitted that she had been convicted of mail fraud. Although recognizing that Chaidez has some incentive to lie, the court believes Chaidez testified truthfully at the hearing. The government did not impeach Chaidez's testimony on the critical issues.

First, the court finds that Plant did not warn Chaidez that her guilty plea could carry immigration consequences. Although the court should presume that Plant generally followed her duty to provide competent advice, the unrebutted, credible evidence is that Plant failed to do so in this case.

Second, the court finds that, had Chaidez known of the immigration consequences, she would not have pled guilty. Chaidez entered her guilty plea without the benefit of a plea agreement. Her guideline range at sentencing was 0-6 months, and she received a sentence of probation. Had Chaidez not received a reduction of two offense level points for acceptance of responsibility, her guideline range would have been 6-12 months. U.S.S.G. § 5A (2003). A sentence of probation would not have been possible, *Id.* § 5B1.1, because mail fraud is a Class B felony, *see* 18 U.S.C. § 3559(a)(2) (classifying as Class B felonies crimes with a maximum term of imprisonment of twenty-five years or more); 18 U.S.C. § 1341 (setting a maximum term of imprisonment of thirty years for mail fraud). Although refusing to plead guilty may have resulted in Chaidez serving a term of imprisonment, she testified that she would have been willing to risk prison and deportation in order to fight the charges and try to remain in the United States with her family. At the coram nobis hearing, the government did not introduce any evidence to contradict this testimony. The court does not have any independent knowledge

5

about the strength of government's evidence against Chaidez or whether any of Chaidez's co-defendants would have testified against her. Taking Chaidez's testimony as the only evidence, and crediting in particular her testimony that the risk of some jail time was worth the chance to avoid deportation, the court finds that it would have been rational under the circumstances for Chaidez to insist on a trial.

Finally, the government argues that laches should bar Chaidez's coram nobis petition. Chaidez was warned in March 2009 that the government sought to deport her because of her fraud conviction. Chaidez first filed her coram nobis petition in October 2009.[3] The government contends that Chaidez's seven month delay was prejudicial because Plant died in December 2009. However, the court finds that Chaidez was reasonably diligent in bringing her claim. Chaidez did not fully understand the notice she received in March 2009. She did not speak English and did not have an attorney. After the immigration judge suggested Chaidez obtain counsel, she met with multiple attorneys. She found her current counsel in August 2009, and the petition was filed in October 2009. In addition, it is difficult to assess whether or not the government was actually prejudiced. Although it is true that Plant is unavailable to testify, the government did not put on any evidence suggesting that Plant would have testified favorably. For instance, the government might have tried to contact the interpreter who sat in on the meetings between Plant and Chaidez; the court does not know whether the government attempted to do so. The government also could have sought testimony from other federal defenders to see if that office had a practice in 2003 of informing defendants about immigration

---

[3] The petition was originally filed as part of a separate civil case. (*See* Case No. 09 CV 6372.) In January, Judge Holderman dismissed the case and ordered Chaidez to file the petition as part of her original criminal case. Chaidez filed her petition with this court on January 25, 2010. (Doc. 171.) At a motion hearing, the court ordered Chaidez to file a corrected petition (Doc. 175), which she did on March 23, 2010 (Doc. 178).

consequences. Given Chaidez's reasonable diligence and a lack of evidence of any prejudice, laches should not bar her claim.

### III. CONCLUSION

Chaidez's petition for writ of error coram nobis is granted. Chaidez's conviction is vacated.


ENTER:                             /s/
                                     JOAN B. GOTTSCHALL
                                     United States District Judge

DATED: October 6, 2010